T. E. M. OSORIO *v.* HENRY WATERHOUSE TRUST
COMPANY, LIMITED, AS RECEIVER OF THE
SECURITY TRUST COMPANY, LIMITED.

No. 1685.

EXCEPTIONS FROM CIRCUIT COURT FOURTH CIRCUIT.
HON. H. L. ROSS, JUDGE.

ARGUED JUNE 18, 1926.                    .        DECIDED JULY 24, 1926.

PERRY, C. J., LINDSAY AND BANKS, JJ.

RECEIVERS—*leave to sue—form of action.*

An order granting plaintiff leave to sue a receiver as prayed
for in his petition, *held*, under the facts of this case, not to be
deemed as limiting plaintiff to bringing only an action in tort, the
facts stated in the petition for leave to sue being such as to
indicate that plaintiff had. a choice of causes of action and could
waive the tort and sue on contract.

ACTION—*form of.*

Where one wrongfully takes and sells the property of another
the law implies a contract to pay for the same and the owner
may elect to waive the tort and bring an action on the implied
contract for the value of the property taken.

SAME.

A declaration, designated upon its face as being in "assumpsit,"
alleging therein that a trust company to which the plaintiff had
intrusted certain securities, of the value of $6400, had sold the
same and converted the proceeds, and that "by reason of the
premises the said trust company became indebted to the plaintiff
in the said sum of $6400.00," and the prayer of the complaint
being for $6400 together with interest thereon and costs and
attorney's commissions, states a cause of action *ex contractu* not-
withstanding the allegations of the tortious conversion.

OPINION OF THE COURT BY LINDSAY, J.

From the record it appears that Henry Waterhouse
Trust Company was, on the 21st day of February, 1922,
appointed receiver of the Security Trust Company, Lim-
ited.

On or about the 1st day of June, 1925, plaintiff herein filed with the receiver a claim against the Security Trust Company for the sum of $6400, said claim being as follows:

"Hilo, Hawaii, June 1st, 1925.
"Security Trust Co, Ltd., Henry Waterhouse
"Co, Ltd., Receiver.
     "To T. E. M. Osorio, Dr.
       "Attorney
"To cash paid to Security Trust Co, Ltd,
"November 8th, 1920 for 100 shares of
"Bethlehem Steel 'B' at $64.00 per
"share ....................................$6400.00

"Territory of Hawaii ⎫
                  ⎬ ss.
"County of Hawaii    ⎭

"T. E. M. Osorio, being first duly sworn, upon his oath deposes and says, that that he is the claimant above mentioned, that the above bill is for $6400.00 paid to the Security Trust Company, Limited for 100 shares of the Bethlehem Steel 'B' at $64.00 to be purchased by it for the claimant, That no certificate of said stock was delivered to the claimant by said Security Trust Co, Ltd., that no portion or part of said amount has been paid by the Security Trust Co, Ltd, to the undersigned on account of said cash paid as above mentioned that there are no offsets or counterclaims against the same, and that the said amount of $6400.00 together with interest is fully due and owing to said claimant.

          (Sgd.)  "T. E. M. Osorio."

The receiver disallowed the claim, whereupon the plaintiff filed a written motion with the court having jurisdiction of the receivership matter for leave to sue the receiver. Plaintiff's motion for leave to sue reads as follows: "That heretofore towit, on the first day of June, 1925, and also prior thereto and within the time allowed by law, and order of this Court therefor, petitioner filed his claim with the said Receiver demanding the payment of $6400.00, cash paid to the Security Trust

Co for the purchase of 100 shares of Bethlehem Steel 'B' stock, but the said Receiver refused to comply with the demands of said claim and has disallowed the same. That the said claim filed by the petitioner arose out of the following facts. That the said Security Trust Co, Ltd, as agent for petitioner purchased for and on account of the petitioner 100 shares of Bethlehem Steel 'B' stock for the sum of $6400.00, for which the petitioner gave his check to the Security Trust Co, Ltd, for the aforesaid sum. That said shares of Bethlehem Steel 'B' stock was so purchased on November 9th, 1920, by said petitioner. That thereafter and before the appointment of the Receivership of said Security Trust Co, Ltd, the petitioner herein requested for the return of the stocks of the said Bethlehem Steel 'B' stock or the money paid to said Security Trust Co. Ltd, for the purchase of said stock, and also requested the sale of the same, and that the said Security Trust Co, Ltd failed and refused to deliver the said stocks to the petitioner and without the knowledge and consent of Petitioner wrongfully and unlawfully converted to its own use the said stock to damage of the petitioner in the sum of $6400.00, together with interest thereon from the date of conversion. That your petitioner is an attorney at law and attorney of record and is acquainted with all the facts concerning this matter and verily believes that he has a good and substantial cause of action against the said Receiver to recover the possession of the property mentioned or in lieu thereof, the value of said stock. Wherefore petitioner prays that leave may be granted to him to bring this action in the Circuit Court of the Fourth Judicial Circuit against the Receiver to recover damages in the sum sustained by him and for such other and further relief as the Court may deem just."

In response to the foregoing motion the court made and

entered an order reading that "leave to sue be and is hereby granted to T. E. M. Osorio to sue the said receiver as prayed for in said petition."

Having received leave to sue the receiver, plaintiff, on August 6, 1925, commenced suit by filing a complaint, designating his action as "assumpsit." The defendant demurred to the complaint on various grounds, among which are the following: "That the said plaintiff has failed to attach to the said declaration a copy of the claim filed with the said defendant and upon which his action is based." "That the said declaration is vague, uncertain and ambiguous in that it does not appear from said declaration whether the said action is one of tort for damages for the conversion of the said one hundred shares of capital stock or one in assumpsit for money had and received from the said plaintiff by the said defendant for the use of said plaintiff." "That it appears from paragraph VIII of said declaration that this action is one sounding in tort for damages for the conversion of the said 100 shares of stock and from paragraph IX of said declaration that the action is one of assumpsit for the recovery of money paid by the plaintiff to the defendant for plaintiff's use."

Upon the filing of the above demurrer plaintiff, on September 15, filed an amended complaint. This complaint, like the original, was also designated by plaintiff as being "assumpsit." After setting forth formal matters the amended complaint contains the following allegations: (6) "That on or about the 9th day of November, 1920, said Security Trust Company, Limited, as agent of the plaintiff, purchased for him and for and on his account one hundred (100) shares of the capital stock 'B' of the Bethlehem Steel Co., which said stock was of the value of $6400.00, and thereupon plaintiff paid said sum of $6400.00 to the said Security Trust Company."

(7) "That after the purchase of said stock as aforesaid, the possession thereof was retained by the said Security Trust Company Limited, as agent of the plaintiff and upon the promise of the Security Trust Company, Limited to return the same to the plaintiff upon his request so to do. That although often requested by the plaintiff so to do, said Security Trust Company, Limited failed and refused to deliver said stock to the plaintiff." (8) "That on or about the 12th day of November, 1921 and prior to the appointment of defendant as receiver as aforesaid, said Security Trust Company, Limited, wrongfully and unlawfully converted said 100 shares of the capital stock of the said Bethlehem Steel Co. to its own use, to the plaintiff's damage in the sum of Six Thousand Four Hundred ($6400.00) Dollars, and by reason of the premises the said Security Trust Company, Limited became indebted to the plaintiff in the said sum of $6400.00." (9) "That heretofore to-wit on or about the 6th day of June, 1925, and long prior thereto, and within the time allowed by law and in accordance with the orders of the aforesaid therefor, plaintiff duly filed his claim with the said Receiver demanding the payment of $6400.00, the amount paid for the aforesaid stocks." "That said defendant has refused to satisfy plaintiff's claim and has disallowed the same. That attached hereto and marked exhibit 'A' is a copy of said claim so filed. Wherefore, Plaintiff demands judgement against the Henry Waterhouse Trust Company Limited, Receiver of the Security Trust Company, Limited in the sum of $6400.00, together with interest on said sum from November 12th, 1921, together with costs and attorney's commissions."

Defendant did not demur to the amended complaint but answered denying all of the allegations therein contained. Thereafter, on January 15, 1926, the plaintiff moved the court for leave to file a second amended complaint. This

proposed amended complaint, like its predecessors, was designated as "assumpsit." The allegations of the second amended complaint, up to and including paragraph 5, were identical with the allegations in the first two complaints. The remainder of the second amended complaint reads as follows: (6) "That on or about the 9th day of November, 1920, the plaintiff engaged the said Security Trust Company, Limited, as its agent for the purpose of purchasing for him and for and on his account one hundred (100) shares of the capital stock class 'B' of the Bethlehem Steel Company and thereupon paid over and delivered to the said Security Trust Company, Limited, the sum of $6400.00 as the sum with which to purchase said stock, the said sum of $6400.00 being the market and purchase price of such 100 shares of the said capital stock of Bethlehem Steel Company." (7) "That the said Security Trust Company, Limited, failed and neglected to purchase such 100 shares of said stock, nor any stock whatsoever, and said Security Trust Company, Limited, wrongfully and unlawfully converted said sum of $6400.00, and refused at all times to return or pay back to the plaintiff the said sum of $6400.00, or any part thereof, although frequently requested so to do, and by reason of the premises the said Security Trust Company, Limited, became indebted to the plaintiff in the sum of $6400.00, with interest from the said 9th day of November, 1920." (8) "That heretofore to-wit on or about the 6th day of June, 1925, and long prior thereto, and within the time allowed by law and in accordance with the orders of this Court therefor, plaintiff duly filed his claim with the said Receiver demanding the payment of $6400.00, the amount paid for the aforesaid stocks. That said defendant has refused to satisfy plaintiff's claim and has disallowed the same. That attached hereto and marked Exhibit 'A' is a copy of said claim so filed." "Wherefore,

plaintiff demands judgement against the Henry Water-house Trust Company, Limited, Receiver of the Security Trust Company, Limited, in the sum of $6400.00, together with interest on said sum from November 9th, 1920, together with costs and attorney's commissions."

The trial court refused to allow the filing of the second amended complaint for the reason that the same sets forth a cause of action in assumpsit, whereas, the first amended complaint sets forth an action in tort, and, the proposed amended complaint, substantially changing the form of action, is not allowable under our statutes relating to the amendment of pleadings. Plaintiff comes here by exceptions to the ruling of the trial court.

The contention of defendant is, that under all the facts disclosed by the record, the cause of action stated in the first amended complaint is one of tort predicated upon the alleged wrongful conversion of the stocks by the trust company. In this connection it is urged by defendant that the leave to sue the receiver, granted by the court to plaintiff, must be construed as being only leave to bring an action *ex delicto* and not *ex contractu,* for the reason that the order granting plaintiff leave to sue was expressed to be "as prayed for in said petition," and the facts set forth in the petition clearly indicated that plaintiff was praying for leave to bring an action *ex delicto* and not *ex contractu.*

Ordinarily, when the question is whether an action is one of tort or contract, the complaint alone is to be examined. The present action, however, being against a receiver appointed by the court, whether in tort or in contract, could not be instituted without leave of court, and for that reason we think an examination of the petition for leave to sue may be permitted.

At the outset, it should be remarked that all of the pleadings filed on behalf of plaintiff, at least up to the

filing of the proposed second amended complaint, are most inartistical in form and are largely, if not wholly, responsible for the confusion that has arisen. It is evident that the pleader had not in mind the distinction between actions *ex contractu* and *ex delicto*. In his motion for leave to sue the receiver, plaintiff stated to the court that he had filed a claim with the receiver demanding "payment of $6400.00, cash paid to the Security Trust Co for the purchase of 100 shares of Bethlehem Steel 'B' stock, but the said receiver refused to comply with the demands of said claim and has disallowed the same." In other words, by the foregoing statement plaintiff gave the court to understand that he had a claim against the trust company for a specific liquidated amount, namely, $6400; that he had made demand upon the receiver for payment of that sum; that the receiver had rejected and disallowed his claim, and that therefore plaintiff wished leave to sue the receiver. It can scarcely be argued that, in a petition for leave to sue, the petitioner should go into details as to the nature of his claim and plead the same with as much technicality as he would plead a complaint in the action he proposes to bring. Neither would petitioner be required in his petition to expressly inform the court as to the form of action he contemplated bringing. A showing to the court that he has a *bona fide* claim is all that would seem to be required of the petitioner under such circumstances. It may well be, therefore, that had the plaintiff herein made no further averments regarding the nature of his claim than the foregoing, he would have been entitled to the requested leave to sue. In the present case, however, the plaintiff, having stated that he had a claim for cash paid to the trust company, went on to state the facts out of which his claim arose, which facts were substantially as follows: That the trust company, as agent for plaintiff, purchased for plaintiff certain

shares of stock, for which plaintiff paid the trust company $6400; that thereafter plaintiff requested the trust company to hand over to him said shares of stock or to return to him the purchase price thereof; and that the trust company failed and refused so to do, and, without the knowledge and consent of plaintiff, wrongfully and unlawfully converted said stock to its own use, to the damage of plaintiff in the sum of $6400, together with interest thereon from the date of conversion. Plaintiff then goes on to say that he verily believes that he has a good and substantial cause of action against the receiver to recover the possession of the property mentioned, or, in lieu thereof, the value of the same, and concludes with a prayer for leave to sue the receiver for damages in the sum sustained by him "and for such other and further relief as the court may deem just." The court granted plaintiff the right to sue "as prayed for in said petition." Was plaintiff, because of what he had stated in the petition, limited to bringing only an action in tort? In his petition plaintiff had told the court in effect that an agent to whom he had intrusted funds under certain conditions, and for a specified purpose, had violated those conditions and converted the funds. Under the facts indicated to the court it was apparent that plaintiff was entitled to sue the trust company for damages for the conversion or waive the tort and sue for a breach of contract. "Where a broker sells securities which he is carrying for a customer on a speculative account, the customer may either sue in conversion, or waive the tort and sue for damages for a breach of contract." *Barber* v. *Ellingwood*, 122 N. Y. S. 369, 377. In *Tugman* v. *National Steamship Co.*, 76 N. Y. 207, 210, the complaint contained allegations of fraudulent conversion and for that reason it was contended that the action was in tort. The court held the allegations concerning the conversion immaterial, and

construed the action to be one *ex contractu,* saying: "When a person receives money of another, which in equity and good conscience he ought to refund, the law implies a promise to account for it to the true owner." "It is well settled, however, that where one wrongfully takes and sells the property of another, the law implies a contract to pay for the same, and the owner may elect to waive the tort and bring an action on the implied contract, for the value of the property so taken and disposed of." *Smith* v. *McCarthy,* 18 Pac. (Kans.) 204, 206. In that case the contention was made that because of allegations in the complaint of unlawful conversion, the action was one of tort. The court held that the other allegations in the complaint sufficiently set forth a cause of action on the implied contract which the law raises in such cases.

As this court has held in *McChesney* v. *Kona Sugar Co.,* 14 Haw. 680, a receiver cannot be sued, or his possession of property held by him as such disturbed, without the permission of the court appointing him. But such permission is usually granted as a matter of course, unless it appears clearly from the application that the demand has no legal foundation. In that case petitioner was asking the court to give him a blanket commission to institute proceedings against the receiver, the prayer being that petitioner be granted leave "to institute and prosecute to final judgment and execution such appropriate suits as your petitioner shall be advised in the premises," and, when the court directly inquired of petitioner whether he was ready to institute the desired proceedings, whether such proceedings would be at law or in equity, and whether in that or some other court, petitioner replied that he did not know. The court therefore refused the leave prayed for, "without prejudice to petitioner to take such other proceedings as it may deem meet." From

the record in the present case it does not seem that the trial court paid special heed to the form of action plaintiff proposed to bring. From the facts presented it was doubtless apparent to the court that plaintiff was entitled to some form of relief against defendant, but it would be too strained a construction to interpret the leave granted as confining the plaintiff to bringing only an action in tort. We construe the leave given as leave to bring whatever form of action was appropriate to the facts related to the court.

Coming now to the first amended complaint, it is contended by defendant that the facts alleged set forth an action in tort. On the other hand, it is the contention of plaintiff that the allegations in the complaint set forth an action *ex contractu.*

It is often difficult to determine whether an action is in tort or on contract. "The definitions of tort and contract are familiar, but there is no certain test by which the court can be guided in determining whether a particular action is ex delicto or ex contractu." *Randolph & Co.* v. *Walker,* 59 S. E. (S. C.) 856, 857. It seems to be the generally accepted rule that, when it is doubtful whether a cause of action relied on is in tort or on contract, every intendment is in favor of regarding the action *ex contractu.* (See *Randolph & Co.* v. *Walker, supra.*)

Viewing the first amended complaint in the present case as a whole, although the point is not entirely free from doubt, we are constrained to believe that an action of assumpsit is pleaded. In the first place, the plaintiff himself designated the action as one in "assumpsit." This fact alone would not, of course, be controlling, or perhaps, under ordinary circumstances, entitled to any weight, but, taken in connection with the other things alleged in the complaint, the use of the word "assumpsit" must be accorded, at least, some significance.

Another factor to be considered is that the claim made by plaintiff upon the receiver, a copy of which is attached to the first amended complaint, is for the specific sum of $6400, for cash paid by plaintiff to the trust company. Regarding this claim plaintiff made affidavit that the $6400 claimed by him was for cash to that amount paid by him "to the Security Trust Company, Limited for 100 shares of the Bethlehem Steel 'B' at $64.00 to be purchased by it for the claimant, That no certificate of said stock was delivered to the claimant by said Security Trust Co, Ltd., that no portion or part of said amount has been paid by the Security Trust Co, Ltd, to the undersigned on account of said cash paid as above mentioned that there are no offsets or counterclaims against the same, and that the said amount of $6400.00 together with interest is fully due and owing to said claimant." Referring to this claim made upon the receiver, plaintiff in paragraph 9 of his first amended complaint alleges that he "duly filed his claim with the said Receiver demanding the payment of $6400.00, the amount paid for the aforesaid stocks." There is surely nothing in this claim nor in the allegation of plaintiff concerning the same to indicate that plaintiff was relying for a cause of action upon the conversion of the stock and not upon the implied promise of the trust company to pay to plaintiff the sum it had wrongfully appropriated.

Another reason that leads to the conclusion that the facts pleaded set forth a good cause of action in assumpsit is found in paragraph 8 of the first amended complaint which reads as follows: "That on or about the 12th day of November, 1921 and prior to the appointment of defendant as receiver as aforesaid, said Security Trust Company, Limited, wrongfully and unlawfully converted said 100 shares of the capital stock of the said Bethlehem Steel Co. to its own use, to the plaintiff's damage in the

sum of Six Thousand Four Hundred ($6400.00) Dollars, and by reason of the premises the said Security Trust Company, Limited became indebted to the plaintiff in the said sum of $6400.00." The allegation that "by reason of the premises the said Security Trust Company, Limited became indebted to the plaintiff in the said sum of $6400.00" was but another way of pleading that, because of the wrongdoing of the trust company, there had arisen, by operation of law, an implied promise on the part of the trust company to pay to plaintiff the amount that it had wrongfully converted to its own use. Such an allegation is hardly appropriate to an action in tort and is usual and proper in an action on an implied promise to pay, in other words, in an action in assumpsit. "The averment of a promise, or consideration, or other element or usual incident of contract, has been held significant in giving character to the action as ex contractu." *Randolph & Co.* v. *Walker, supra,* citing 21 Ency. Pl. & Pr. 659.

Still another reason for holding the allegations in the first amended complaint as setting forth an action in assumpsit is the language used by plaintiff in his prayer. The prayer is that plaintiff demands judgment "in the sum of $6400.00 together with interest on said sum from November 12th, 1921, together with costs and attorney's commissions." In paragraph 8 of his complaint plaintiff had alleged what was the equivalent to an implied promise on the part of the trust company to pay to plaintiff the sum of $6400. The prayer is nothing more than a demand that the trust company be compelled to perform this implied promise. The fact, too, that the plaintiff prays for attorney's commissions is significant, for only in actions of assumpsit are attorney's commissions recoverable. As was held in *Smith* v. *McCarthy, supra,* "The prayer

of the petition also indicates an intention of the pleader to waive the tort, and rely on the implied promise."

If the contention of the defendant is sound and plaintiff is not allowed to file the proposed second amended complaint he will be deprived of any remedy, for the time allowed by law for the filing of claims against the receiver has expired. This fact alone is an added reason for holding the action set forth in the first amended complaint as being *ex contractu* and not *ex delicto,* and there are numerous authorities holding that an action will be held to be *ex contractu* for the sole purpose of avoiding the bar of the statute of limitations. In *Randolph & Co.* v. *Walker, supra,* the camplaint alleged plaintiff's deposit with the defendant of certain sums of money on the agreement of defendant to hold the money as plaintiff's agent, subject at all times to his order, and defendant's refusal to pay over the money, although it was further alleged that "while the defendant was holding the said sum of money as agent and in trust for the plaintiff, unmindful of his duty in that regard, the said D. V. Walker tortiously converted the money to his own use and unlawfully refused, and still refuses, to return the said money." The court held that, notwithstanding this allegation of unlawful conversion, although the point was a close one, the complaint did state a cause of action *ex contractu,* saying (p. 858) : "The point is close, but on the whole we have no hesitation in holding the complaint to state a cause of action ex contractu. Even as regarding the case as doubtful, it should be held to be an action ex contractu, not ex delicto." In *Delaney* v. *Great Bend Implement Co.,* 98 Pac. (Kans.) 781, the court says: "The petition is inartistically drawn and reeks with surplusage.    *    *    *" (Quoting from *Railway Company* v. *Hutchings, Sealy & Co.,* 99 Pac. 230) : " 'The doctrine is well settled that where a petition contains a good cause of action for a breach of

contract, the addition of words or averments which are appropriate to a cause of action for a wrong will not change the action from tort to contract. Beach on Modern Law of Contracts, §1679. And in case of doubt the courts are inclined against construing the pleading as embodying a cause of action for tort' " (citing a number of cases, among which is *St. Louis I. M. & S. R. Co.* v. *Sweet*, 40 S. W. (Ark.) 463, where the action was held to be *ex contractu* for the reason that an action *ex delicto* would have been barred by the statute of limitations). "When property of another has been converted, there is always an implication of an indebtedness, and the injured party may waive the tort and sue for the value of the property. Douglas v. Loftus, Adm'x, 85 Kan. 720, 725, 119 Pac. 74. The petition states the facts which, it is claimed, show the appellant's liability, and it is well settled that, if any doubt exists as to the nature of the action, the courts incline toward holding it an action in contract" (citing cases) "and will sometimes do this for the declared purpose of avoiding the statute of limitations." *Washbon* v. *Linscott State Bank*, 125 Pac. (Kans.) 17, 20. See also *Lorick* v. *Palmetto National Bank*, 57 S. E. (S. C.) 527.

In *Austin* v. *Rawdon*, 44 N. Y. 63, the complaint alleged an agreement by defendants to deliver up certain securities, and demand therefor, and that defendants wrongfully refused to deliver them and wrongfully disposed of and converted them to their own use, to the great damage of the plaintiff, and prayed judgment for the value of the securities, with interest, as the damages sustained by plaintiff by means of the premises. The lower court held that from these allegations the action was one of tort. On appeal the trial court was reversed, the appellate court holding that the allegations stated a cause *ex contractu*, saying: "The allegation of a wrongful refusal by

the defendants to deliver the securities and a wrongful disposition and conversion thereof, by them, to their own use, must be construed as an averment of a breach of the agreement and not as the gist of the action."

As we have already remarked, the remedy prayed for is important in determining whether the action is one in tort or one on contract. In *Lane v. Frawley*, 78 N. W. (Wis.) 593, 594, in discussing this question the court said: "In many cases in this court the allegation of the wrongful obtaining or withholding of money from the plaintiff has been held not inconsistent with the contract character of the action; but in every such case that character has been saved by the fact that the remedy prayed was that to which an implied contract entitled the plaintiff, namely, repayment of the money actually received or retained by the defendant," citing from *Van Oss v. Synon*, 85 Wis. 661, 56 N. W. 190, where the court says: "In actions at law the demand for judgment is vastly important in determining the nature of the action, as between tort and contract, or as between trover and money had and received." In *Town of Fifield v. Sweeney*, 62 Wis. 204, 22 N. W. 416, the action was held to be in contract for the reason that the prayer for relief was simply that to which the implied contract entitled the plaintiff. In that case the money was alleged to have been obtained by fraud and deceit, but the court says: "The whole complaint goes upon the implied assumpsit to repay the money so had and received, and interest thereon, and no other damage by reason of the fraud or mistake is claimed. The complaint as for money had and received is even better by reason of the statement of the facts by which the assumpsit is implied, and these facts do not change the action into tort."

For the reasons above set forth, we are of the opinion that the allegations in the first amended complaint set

forth a cause of action in assumpsit and plaintiff should have been allowed to file his proposed second amended complaint.       .

The exceptions are sustained and the cause remanded to the circuit court with instructions to allow the second amended complaint and for further proceedings not inconsistent with this opinion.

*J. W. Russell* (also on the brief) for plaintiff.

*W. H. Smith* (*Harry Irwin* with him on the brief) for defendant.      ,